

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
**FILED**

SEP 2 2 2010

CLERK, U.S. DISTRICT COURT
By _____
Deputy

EQUAL EMPLOYMENT OPPORTUNITY §
COMMISSION, §
§
§
Plaintiff, §
§ Civil Action No. 3:08-CV-1552-D
VS. §
§
§
SERVICE TEMPS, INC., d/b/a §
SMITH PERSONNEL SOLUTION, §
§
Defendant. §

### COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

Now that you have heard all of the evidence and the argument of counsel, it becomes my

duty to give you the instructions of the court concerning the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you and to apply that law to the

facts as you find them from the evidence in the case. You are not to single out one instruction as

stating the law, but must consider the instructions as a whole. Neither are you to be concerned with

the wisdom of any rule of law stated by me.

Regardless of any opinion you may have as to what the law is or ought to be, it would be a

violation of your sworn duty to base a verdict upon any view of the law other than that given in these

instructions, just as it would also be a violation of your sworn duty, as judges of the facts, to base

a verdict upon anything other than the evidence in the case.

In deciding the facts of this case, you must not be swayed by bias or prejudice or favor as

to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or

public opinion. The parties and the public expect that you will carefully and impartially consider

30   all of the evidence in the case, follow the law as stated in these instructions, and reach a just verdict

31   regardless of the consequences.

32      This case should be considered and decided by you as an action between persons of equal

33   standing in the community and holding the same or similar stations in life.  The law is no respecter

34   of persons, and all persons stand equal before the law and are to be dealt with as equals in a court

35   of justice.

36      As stated earlier, it is your duty to determine the facts, and in so doing you must consider

37   only the evidence I have admitted in the case.  The term "evidence" includes the sworn testimony

38   of the witnesses, the exhibits admitted in the record, and the stipulated facts.  Stipulated facts must

39   be regarded as proven facts.  The term "evidence" does not include anything that I have instructed

40   you to disregard.

41      Evidence admitted before you for a limited purpose may not be considered for any purpose

42   other than the limited purpose for which it was admitted.

43      Remember that any statements, objections, or arguments made by the lawyers are not

44   evidence in the case.  The function of the lawyers is to point out those things that are most

45   significant or most helpful to their side of the case and, in so doing, to call your attention to certain

46   facts or inferences that might otherwise escape your notice.  In the final analysis, however, it is your

47   own recollection and interpretation of the evidence that controls in the case.  What the lawyers say

48   is not binding upon you.  If an attorney's question contained an assertion of fact that the witness did

49   not adopt, the assertion is not evidence of that fact.

50      You are not bound by any opinion that you might think I have concerning the facts of this

51   case, and if I in any way said or done anything that leads you to believe that I have any opinion

52   about the facts in this case, you are instructed to disregard it. Further, nothing in these instructions

53   to you is made for the purpose of suggesting or conveying to you an intimation as to what verdict

54   I think you should find.

55         Although you should consider only the evidence in the case, you are permitted to draw such

56   reasonable inferences from the testimony and exhibits as you feel are justified in the light of

57   common experience. In other words, you may make deductions and reach conclusions that reason

58   and common sense lead you to draw from the facts established by the evidence in the case.

59         You should not be concerned about whether the evidence is direct or circumstantial. "Direct

60   evidence" exists when the evidence directly establishes the facts that a party asserts to be true, such

61   as by an eye witness or in a document. "Circumstantial evidence" is proof of a chain of facts and

62   circumstances that, without going directly to prove the existence of an essential fact, gives rise to

63   a logical inference that such fact does actually exist. The law makes no distinction between the

64   weight you may give to either direct or circumstantial evidence.

65         Now, I have said that you must consider all of the evidence. This does not mean, however,

66   that you must accept all of the evidence as true or accurate.

67         You are the sole judges of the "credibility" or believability of each witness and the weight

68   to be given to the witness' testimony. In weighing the testimony of a witness, you should consider

69   the witness' relationship to a particular party; the witness' interest, if any, in the outcome of the

70   case; the witness' manner of testifying; the witness' opportunity to observe or acquire knowledge

71   concerning the facts about which the witness testified; the witness' candor, fairness, and

72   intelligence; and the extent to which the witness' testimony has been supported or contradicted by

73   other credible evidence. You may, in short, accept or reject the testimony of any witness, in whole

74 or in part.

75     Also, the weight of the evidence is not necessarily determined by the number of witnesses

76 testifying as to the existence or nonexistence of any fact.  You may find that the testimony of a

77 smaller number of witnesses as to any fact is more credible than the testimony of a larger number

78 of witnesses to the contrary.

79     A witness may be "impeached" or discredited by contradictory evidence, by a showing that

80 the witness testified falsely concerning a material matter, or by evidence that at some other time the

81 witness said or did something, or failed to say or do something, that is inconsistent with the witness'

82 present testimony.  If you believe that any witness has been so impeached, it is your exclusive

83 province to give the testimony of that witness such credibility or weight, if any, as you think it

84 deserves.

85     The rules of evidence provide that if scientific, technical, or other specialized knowledge will

86 assist the jury to understand the evidence or to determine a fact in issue, a witness qualified as an

87 expert by knowledge, skill, experience, training, or education may testify and state an opinion

88 concerning such matters if the testimony is based upon sufficient facts or data, the testimony is the

89 product of reliable principles and methods, and the witness has applied the principles and methods

90 reliably to the facts in the case.

91     You should consider each expert opinion received in evidence in this case and give it such

92 weight as you may think it deserves.  If you should decide that the opinion of an expert witness is

93 not based upon sufficient knowledge, skill, experience, training, or education, or if you should

94 conclude that the reasons given in support of the opinion are not sound, or that the opinion is not

95 based upon sufficient facts or data, or that the opinion is outweighed by other evidence, or that the

96 opinion is not the product of reliable principles and methods, or that the witness has not applied the

97 principles and methods reliably to the facts in the case, then you may disregard the opinion entirely.

98      The plaintiff has the burden of proving each essential element of its claim by a

99 "preponderance of the evidence." A preponderance of the evidence means such evidence as, when

100 considered and compared with that opposed to it, has more convincing force and produces in your

101 minds a belief that what is sought to be proved is more likely true than not true. To establish a claim

102 by a "preponderance of the evidence" merely means to prove that the claim is more likely so than

103 not so.

104      In determining whether any fact in issue has been proved by a preponderance of the

105 evidence, the jury may consider the testimony of all the witnesses, regardless of who may have

106 called them, and all the exhibits received in evidence, regardless of who may have produced them.

107      If the proof should fail to establish any essential element of the plaintiff's claim by a

108 preponderance of the evidence, the jury must find against the plaintiff.

109      During the trial of this case certain testimony has been introduced by way of deposition. A

110 deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.

111 Deposition testimony can be introduced for the purpose of impeaching or discrediting a witness.

112 If, in the deposition, the witness made any statements in conflict with testimony the witness gave

113 in court, you may consider such conflicts and any explanation therefor in determining the witness'

114 credibility.

115      As used in this charge, the term "EEOC" means plaintiff Equal Employment Opportunity

116 Commission, "Moncada" means Jacquelyn Moncada, and "Smith" means defendant Service Temps,

117 Inc. d/b/a Smith Personnel Solution.

118  As a corporation, Smith can act only through natural persons as its agents or employees. In

119  general, any agent or employee of a corporation may bind the corporation by acts and declarations

120  made while acting within the scope of the authority delegated to the employee by the corporation,

121  or within the scope of the person's duties as an employee of the corporation.

122  EEOC'S DISABILITY DISCRIMINATION CLAIM

123  The Americans with Disabilities Act of 1990 ("ADA") makes it unlawful for an employer

124  to intentionally discriminate against a qualified individual with a disability because of the

125  individual's disability. By law, the EEOC is permitted to sue on behalf of a person whom it

126  contends has been subjected to disability discrimination. The EEOC alleges that Smith

127  discriminated against Moncada by failing or refusing to hire her because of her disability (severe

128  to profound hearing loss). It sues to recover damages on behalf of Moncada. Smith denies that it

129  discriminated against Moncada because of her disability.

130  To establish this claim on behalf of Moncada, the EEOC must prove each of the following

131  essential elements by a preponderance of the evidence:

132  First, that Moncada has a disability;

133  Second, that Moncada was qualified for the job for which she
134  applied; and
135
136  Third, that Smith refused to hire her because of her disability.

137  The EEOC does not have to prove that Moncada's disability was the only reason Smith failed

138  or refused to hire her.

139    If you disbelieve the reason Smith has given for its decision, you may infer that Smith failed

140    or refused to hire Moncada because of her disability.

141    Disability means (1) a physical or mental impairment that substantially limits one or more

142    major life activities; or (2) a record of such an impairment; or (3) being regarded as having such an

143    impairment.

144    A person is substantially limited in a major life activity if she is (1) unable to perform the

145    activity; or (2) significantly restricted in the condition, manner, or duration under which she can

146    perform the activity as compared to the average person in the general population.

147    The following factors should be considered in determining whether an individual is

148    substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the

149    duration or expected duration of the impairment; and (3) the permanent or long term impact, or the

150    expected permanent or long term impact, of or resulting from the impairment.

151    A major life activity is an activity that is important or significant, but it does not necessarily

152    have to be public, economic, or undertaken daily. Major life activities are those basic activities that

153    the average person in the general population can perform with little or no difficulty, and they

154    include, but are not limited to, such things as caring for oneself, performing manual tasks that are

155    central to daily life, walking, seeing, hearing, speaking, breathing, learning, working, eating, lifting,

156    reaching, sitting, standing, and reproduction.

157    A person has a record of such an impairment if she has a history of, or has been misclassified

158    as having, a mental or physical impairment that substantially limits one or more major life activities.

159    A person is regarded as having such an impairment if she: (1) has a physical or mental

160    impairment that does not substantially limit major life activities, but is treated by Smith as having

161  a substantially limiting impairment; or (2) has a physical or mental impairment that substantially

162  limits one or more major life activities, but only because of the attitudes of others toward the

163  impairment; or (3) has no actual impairment at all, but is treated by Smith as having a substantially

164  limiting impairment.

165          A qualified individual is one who, with or without reasonable accommodations, can perform

166  the essential functions of the job.

167          Essential functions are those that are fundamental to the job at issue.  The term does not

168  include the marginal functions of a job.


169  QUESTION NO. 1:

170          Did the EEOC prove each of the essential elements of its disability discrimination claim on

171  behalf of Moncada?

172                  Instruction:  The EEOC has the burden of proof.  If it has met its
173                  burden, answer "Yes;" otherwise, answer "No."

174          ANSWER:      YES


175          If you have answered Question No. 1 "Yes," read the following instructions regarding

176  compensatory damages and answer Question No. 2.  Otherwise, proceed to the court's instructions

177  concerning jury deliberations.

## COMPENSATORY DAMAGES

If you find that Smith is liable in this case, then you must determine an amount that is fair compensation for Moncada's damages.

You should not interpret the fact that I am giving instructions about damages as an indication in any way that I believe the EEOC should, or should not, win this case. It is your first task to decide whether Smith is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Smith is liable and that the EEOC is entitled to recover damages on Moncada's behalf.

You may award compensatory damages only for injuries that the EEOC proves were caused by Smith's allegedly unlawful conduct. The damages that you award must be fair compensation, no more and no less. Compensatory damages are not allowed as a punishment against a party.

Back pay is the amount of money that, as of the date of trial, would put Moncada in the same position that she would have held but for the discrimination in question. In other words, back pay is the value of wages and employee benefits (including pension and other retirement benefits) that Moncada would have received, less any amounts that she actually earned from other employment, from the date Smith failed or refused to hire her until the present.

You may award compensatory damages for emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life if you find that any such damages were caused by Smith's violation of the ADA. Emotional harm is not to be presumed. To prove that Moncada suffered emotional harm, the EEOC must establish the existence, nature, and severity of the emotional harm. In other words, there must be some specific discernable injury to her emotional state. Emotional harm may manifest itself through sleeplessness, anxiety, stress, depression, marital

strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown. It may also be exhibited through physical symptoms such as gastrointestinal disorders, hair loss, headaches, and similarly serious maladies.

No evidence of the monetary value of such intangible things as pain and suffering need be introduced in evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial. Mental anguish implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that the EEOC prove Moncada's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

An award of future damages necessarily requires that monetary payment be made now for a loss that Moncada will not actually suffer until some future date. If you should find that Moncada is entitled to future damages, then you must determine the present value or worth, in dollars, of such future damages.

220   QUESTION NO. 2:

221   What amount of compensatory damages, if any, should be awarded to the EEOC on

222   Moncada's behalf?

223   Instruction:  The EEOC has the burden of proof.  Answer in dollars and
224   cents, if any.  Consider the elements of damages listed below and none other.
225   Consider each element separately.  Do not include damages for one element
226   in the other element.  Do not include interest on any amount of damages you
227   find.

228   ANSWER:

229   Back pay                                      $14,400.00

230   Emotional pain and suffering,
231   inconvenience, mental anguish
232   and loss of enjoyment of life
233   in the past                                   $20,000.00

234   Emotional pain and suffering,
235   inconvenience, mental anguish
236   and loss of enjoyment of life
237   that in reasonable probability
238   will be incurred in the future                ∅

239   If you have answered Question No. 1 "Yes," read the following instructions regarding

240   punitive damages and answer Question No. 3.  Otherwise, proceed to the court's instructions

241   concerning jury deliberations.

242   PUNITIVE DAMAGES

243   If the EEOC proves by a preponderance of the evidence that Smith discriminated against

244   Moncada with malice or with reckless indifference to her right to be free from disability

245   discrimination, the law allows you, but does not require you, to award punitive damages.  The

246   purposes of an award of punitive damages are, first, to punish a wrongdoer for misconduct and,

247   second, to warn others against doing the same.

248        An action was in "reckless indifference" to Moncada's federally protected rights if it was

249   taken in the face of a perceived risk that the conduct would violate federal law. The EEOC is not

250   required to show egregious or outrageous discrimination to recover punitive damages. However,

251   proof that Smith engaged in intentional discrimination is not enough in itself to justify an award of

252   punitive damages.

253        In order for Smith to be liable for punitive damages, the EEOC must prove that the agent of

254   Smith of whose conduct the EEOC complains (1) was employed in a position of managerial

255   capacity, (2) acted within the scope of employment, and (3) acted with malice or reckless

256   indifference to Moncada's right not to be discriminated against based on disability. Reckless

257   indifference means that Smith acted in light of a perceived risk that its conduct violated the laws

258   prohibiting discrimination.

259        Additionally, you cannot award punitive damages against Smith if Smith proves that its

260   agent's actions regarding Moncada were contrary to Smith's good faith efforts to prevent

261   discrimination in the workplace. Examples of such efforts are putting in place and adhering to a

262   policy against disability discrimination, training employees, and investigating complaints about such

263   conduct.

264        If you determine that Smith's conduct justifies an award of punitive damages in favor of the

265   EEOC on behalf of Moncada, you may award an amount of punitive damages that all jurors agree

266   is proper. In determining the amount, you should consider the following questions: How offensive

267   was the conduct? What amount is needed, considering Smith's financial condition, to prevent future

268   repetition? Does the amount of punitive damages have a reasonable relationship to the actual

269   damages awarded? In making any award of punitive damages, you should consider that the purposes

270   of punitive damages are to punish a defendant and to deter the defendant and others from engaging

271   in similar conduct in the future.  If you decide to award punitive damages, you must use sound

272   reason in setting the amount of the damages.  The amount of an award of punitive damages must not

273   reflect bias, prejudice, or sympathy toward any party.  It should be presumed that Moncada has been

274   made whole by compensatory damages, so punitive damages should be awarded only if Smith's

275   misconduct, after having paid compensatory damages, is sufficient to warrant the imposition of

276   further sanctions to achieve punishment or deterrence.

277   <u>QUESTION NO. 3</u>:

278       What amount of punitive damages, if any, should be awarded to the EEOC on behalf of

279   Moncada?

280           <u>Instruction</u>:  The EEOC has the burden of proof, except regarding
281           good faith efforts to comply with the law.  Answer in dollars and
282           cents, if any.
283
284      ANSWER:  $150,000.00

285   Jury Deliberations

286       The fact that I have given you in this charge instructions about a particular claim, or that I

287   have not so instructed you, should not be interpreted in any way as an indication that I believe a

288   particular party should, or should not, prevail in this case.

289       In order to return a verdict your verdict must be unanimous.  It is your duty as jurors to

290   consult one another and to deliberate with a view towards reaching an agreement.  Each of you must

291   decide the case for yourself, but only after an impartial consideration with each other of all the

- 13 -

292  evidence in the case.  In the course of your deliberations, do not hesitate to reexamine your own

293  view and change your opinion if convinced it is erroneous.  Do not, however, surrender your honest

294  conviction as to the weight or effect of the evidence solely because of the opinion of other jurors or

295  for the mere purpose of returning a verdict.  Remember at all times that you are not partisans.  You

296  are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

297  After I finish reading this charge, you will retire to the jury room.  I will send you the

298  exhibits that have been admitted into evidence.  You will first select one member of the jury to act

299  as presiding juror.  The presiding juror will preside over your deliberations and will speak on your

300  behalf here in court.

301  Do not deliberate unless all members of the jury are present in the jury room.  In other words,

302  if one or more of you go to lunch together or are together outside the jury room, do not discuss the

303  case.

304  When you have reached unanimous agreement as to your verdict, the presiding juror shall

305  fill in your answers to the questions on a copy of the charge that I will provide to you for this

306  purpose, shall date and sign the last page of that copy of the charge, and shall notify the court

307  security officer that you have reached a verdict.  The court security officer will then deliver the

308  verdict to me.

309  The court will honor the schedule you set for your deliberations and your requests for breaks

310  during your deliberations.  From time to time I may communicate with you concerning your

311  schedule. This is done primarily for the purpose of anticipating the court's staffing needs, and is not

312  in any way intended to suggest that your deliberations should be conducted at a different pace or on

313  a different schedule.

- 14 -

During the trial, the court reporter made a verbatim record of the proceedings. The court rules do not provide for testimony to be produced for the jury in written form, or for testimony to be read back to the jury as a general aid in refreshing the jurors' memories. In limited circumstances, the court may direct the court reporter to read testimony back to the jury in open court. This is done, however, only when the jury certifies that it disagrees as to the testimony of a particular witness, and identifies the specific testimony in dispute.

If, during your deliberations, you desire to communicate with me, your presiding juror will reduce your message or question to writing, sign it, and pass the note to the court security officer, who will bring it to my attention. I will then respond as promptly as possible, either in writing or by asking you to return to the courtroom so that I can address you orally. If you do send a message or ask a question in which you indicate that you are divided, never state or specify your numerical division at the time.

September 21, 2010.


SIDNEY A. FITZWATER
CHIEF JUDGE

- 15 -

331    The foregoing is the unanimous verdict of the jury.

332    Dated: ___9-22-10___                      _____

333                                                 Presiding Juror