IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EQUAL EMPLOYMENT OPPORTUNITY    §
COMMISSION,                     §
                                §
                   Plaintiff,   §
                                §  Civil Action No. 3:08-CV-1552-D
VS.                             §
                                §
SERVICE TEMPS, INC., d/b/a      §
SMITH PERSONNEL SOLUTION,       §
                                §
                   Defendant.   §

MEMORANDUM OPINION
AND ORDER

Following a jury trial and judgment in favor of plaintiff
Equal Employment Opportunity Commission ("EEOC"), defendant Service
Temps Inc., d/b/a Smith Personnel Solution ("Smith") moves for
dismissal for lack of subject matter jurisdiction and for judgment
as a matter of law on punitive damages, or, in the alternative, for
remittitur or for a new trial.  EEOC applies for entry of judgment
for injunctive relief and prejudgment interest.  For the reasons
that follow, the court denies Smith's motion to dismiss for lack of
subject matter jurisdiction, denies Smith's motion for judgment as
a matter of law, and denies Smith's motion for a new trial on the
condition that EEOC accept a remittitur that reduces the jury's
punitive damages award to $68,800.  The court grants EEOC's
application for injunctive relief and prejudgment interest.

EEOC sued Smith, an employment staffing company, alleging that it had discriminated against Jacquelyn Moncada ("Moncada") based on a disability (hearing loss) by denying her employment, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*  Moncada sought to apply for a job as a warehouse worker at Tuesday Morning, a company for whom Smith provided staffing services.  Viewed favorably to the verdict, the evidence reflects that, when Moncada visited Smith in response to a job posting, Carl Ray ("Ray"), a Smith manager, refused to provide her an employment application or interview her for a job working at Tuesday Morning on the ground that it would be dangerous for her to work in a warehouse if she could not communicate with other employees and her employer.

In finding that Smith discriminated against Moncada because of a disability, the jury necessarily found that Moncada has a disability, that she was qualified for the job for which she applied, and that Smith refused to hire her because of her disability.[1]  Moreover, in finding Smith liable for punitive damages, the jury necessarily found that Ray was employed in a managerial capacity, acted within the scope of employment, and acted with malice or reckless indifference to Moncada's right not

---

[1]Under the instructions in the jury charge, the jury necessarily made these findings in returning a verdict in favor of EEOC.

to be discriminated against based on disability.[2]

The jury awarded EEOC, on Moncada's behalf, $14,400 in back pay, $20,000 in compensatory damages, and $150,000 in punitive damages. The court entered judgment on the verdict and also awarded prejudgment and post-judgment interest.

## II

The court first addresses Smith's post-judgment motion to dismiss for lack of subject matter jurisdiction.

### A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). If subject matter jurisdiction is lacking, the court must dismiss the suit. *See Stockman*, 138 F.3d at 151.

EEOC brought suit under the ADA, which prohibits discrimination by a "covered entity." This term includes an "employer," defined in part as "a person engaged in an industry affecting commerce[.]" *See* 42 U.S.C. § 12111(2) and (5)(A). Smith

_____

[2]As noted, *see supra* note 1, under the instructions in the jury charge, the jury necessarily made these findings in returning a verdict in favor of EEOC for punitive damages.

- 3 -

argues that because EEOC did not present evidence that Smith engaged in an industry affecting commerce, the court must dismiss the action under Fed. R. Civ. P. 12(h)(3). *See* Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). EEOC responds that its pleadings gave Smith fair notice of the grounds on which the court has subject matter jurisdiction. In its complaint, EEOC alleged that Smith was an employer engaged in an industry affecting commerce under the ADA. Although Smith denied that allegation in its answer, it did not file a motion to dismiss for lack of subject matter jurisdiction until after trial.

B

The question whether the court has subject matter jurisdiction turns on whether the requirement that an employer be "affecting commerce" to be subject to the ADA is a prerequisite for subject matter jurisdiction or is part of EEOC's substantive cause of action. "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006); *see also Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (holding that time-bar to creditor's objection to discharge of debtor was not jurisdictional, but was a defense, because the "provision conferring jurisdiction over objections to discharge . . . contains no timeliness condition"). The *Arbaugh* Court held

- 4 -

that the employee-numerosity requirement of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, "relates to the substantive adequacy of [plaintiff's] Title VII claim[.]" *Arbaugh*, 546 U.S. at 504.  The Fifth Circuit applied *Arbaugh* in *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352 (5th Cir. 2006), and held that the definition section of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, is a substantive ingredient of a claim for relief and not a jurisdictional limitation.  *See Minard*, 447 F.3d at 356-57 (citing *Arbaugh*, 546 U.S. at 514-15).  Likewise, the "affecting commerce" requirement and the employee-numerosity requirement of the ADA are set out in the definition section of the ADA.  *See* 42 U.S.C. § 12111(5)(A).  The employee-numerosity provision is contained in the same sentence as the "affecting commerce" requirement.  *See id*. The logic and reasoning of *Arbaugh* therefore extend to the "affecting commerce" requirement: the "affecting commerce" requirement is not jurisdictional but is part of EEOC's substantive discrimination claim.

The source of this court's subject matter jurisdiction is instead found in 28 U.S.C. § 1331 (federal question jurisdiction). EEOC alleges a cause of action arising under the ADA, which is a law of the United States.  Moreover, "[j]urisdiction under the federal question statute is not defeated by the possibility that the averments, upon close examination, might be determined not to

state a cause of action." *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1316-17 (7th Cir. 1997).

Because the "affecting commerce" requirement is part of EEOC's substantive claim, Smith was required to raise this defense at least before an adverse judgment was entered against it.[3] Smith cannot argue post-judgment that Smith does not affect commerce. The court therefore denies Smith's motion to dismiss for lack of subject matter jurisdiction.[4]

C

Moreover, in the joint pretrial order, EEOC and Smith stipulated that "[a]ll parties are properly before this Court." Jt. Pretrial Order 2 ¶ 1. The parties are bound by their factual stipulations, which "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, ___ U.S. ___, 130 S. Ct. 2971, 2983 (2010) (citation omitted). Although the parties cannot by agreement confer subject matter

_____

[3]The court need not decide precisely when or how Smith should have raised this argument, but Smith was certainly obligated to do so before judgment was entered. This conclusion is sufficient for purposes of this case.

[4]Even if Smith could raise this argument for the first time after judgment, it would be very difficult to establish that Smith does not affect commerce. "The 'affects commerce' jurisdictional obstacle is very low indeed." *EEOC v. Ratliff*, 906 F.2d 1314, 1316 (9th Cir. 1990). Smith stipulated that Tuesday Morning, which is a national company, is a Smith client. That stipulation is likely enough to meet the very low "affects commerce" standard.

jurisdiction on the court, they can "stipulate to facts that form the basis of subject matter jurisdiction." *See Woolwine Ford Lincoln Mercury v. Consol. Fin. Res., Inc.*, 245 F.3d 791, at *2 (5th Cir. 2000) (per curiam) (unpublished); *see also Ry. Co. v. Ramsey*, 89 U.S. 322, 327 (1874) ("Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission."); *United States v. Mills*, 199 F.3d 184, 188 & n.3 (5th Cir. 1999) (per curiam) (citing *Ramsey*, 89 U.S. at 327). The joint pretrial order supersedes all pleadings and governs the issues and evidence to be presented at trial. *See, e.g., Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 345-46 n.5 (5th Cir. 2002). "Each party has an affirmative duty to allege at the pretrial conference all factual and legal bases upon which the party wishes to litigate the case." *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192-93 n.13 (5th Cir. 1985). "Failure to do so may implicate waiver of the issue at the discretion of the trial court, subject to considerations of fairness and efficient administration of the trial." *Id.*

By stipulating that "[a]ll parties are properly before this Court," Smith effectively conceded the existence of all of *the facts* necessary for this court to exercise subject matter jurisdiction, even if Smith could not by stipulation confer

jurisdiction on this court. Smith cannot enter into such a factual stipulation, hope for a favorable verdict (in which event it likely would never have raised a jurisdictional challenge), and then attack the court's subject matter jurisdiction following an adverse verdict and judgment. The court therefore denies Smith's motion to dismiss for lack of subject matter jurisdiction.

III

The court next addresses EEOC's application for injunctive relief.[5] EEOC essentially requests that the court enjoin Smith from discriminating against any disabled employee, require Smith to notify current employees of Smith's disability discrimination policy, and order Smith to provide one hour of training to its managers concerning compliance with the ADA.

A

The court can enjoin a defendant from engaging in unlawful employment practices or order such affirmative action as is appropriate if the court finds that the defendant has intentionally engaged in an unlawful employment practice. *See* 42 U.S.C. § 2000e-5(g)(1) (applies to ADA by 42 U.S.C. § 12117(a)). The jury found that Smith had intentionally discriminated against Moncada, and Smith does not contest this finding. Smith does argue, however, that a finding of intentional discrimination is insufficient of

---

[5]To the extent necessary, the court treats EEOC's motion as a Rule 59(e) motion to alter or amend the judgment.

itself to justify an injunction. The statute makes it clear, however, that injunctive relief is at least available——even if not mandatory——upon a finding of intentional discrimination.

"Issuance of an injunction rests primarily in the informed discretion of the district court." *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977) (discussing availability of injunctive relief under, *inter alia*, Title VII); *see also EEOC v. Café Acapulco, Inc.*, No. 3:98-CV-2302-P, slip op. at *1 (N.D. Tex. June 7, 2000) (Solis, J.) ("Once discrimination has been established in a Title VII action, the issuance of an injunction rests in the sound discretion of the district court." (citation omitted)). But "[a]bsent clear and convincing proof of no reasonable probability of further noncompliance with the law, a grant of injunctive relief is mandatory." *EEOC v. Fenyves & Nerenberg, M.D.P.A.*, 1999 WL 134279, at *7 (Mar. 9, 1999) (Fitzwater, J.) (citing *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977)).[6]

---

[6]A Fifth Circuit panel set out a different standard in *Meyer v. Brown & Root Construction Co.*, 661 F.2d 369 (5th Cir. Nov. 1981). In *Meyer* the panel held that a finding that the defendant intentionally discriminated in employment "does not necessitate either injunctive relief or a back pay award." *Id.* at 373-74. Rather, the court must "balance the equities and arrive at a fair result consistent with Title VII's goals of eliminating discrimination." *Id.* at 374 (citation omitted). But "[i]t is axiomatic in the Fifth Circuit that in the case of conflicting panel opinions, the earlier one controls, because one panel of the Fifth Circuit may not overrule another." *MCI Telecomms. Corp. v. United Showcase, Inc.*, 847 F. Supp. 510, 512 (N.D. Tex. 1994) (Fitzwater, J.) (citing *In re Dyke*, 943 F.2d 1435, 1442 (5th Cir.

If the court finds that the defendant intentionally discriminated in the past, the court has "broad discretion to craft an injunction that will ensure the employer's compliance with the law." *EEOC v. Rite Aid Corp.*, 2004 WL 1488578, at *10 (E.D. La. June 30, 2004) (citing 42 U.S.C. § 2000e-5(g)(1) and *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467 (6th Cir. 1999)). Thus EEOC can obtain an injunction "'even where the EEOC only identifies one or a mere handful of aggrieved employees.'" *Id.* (quoting *Frank's Nursery,* 177 F.3d at 467-68). And EEOC need not allege that the defendant engaged in a pattern or practice of discrimination. *Id.* (quoting *Frank's Nursery*, 177 F.3d at 468).

B

To prevent future employment discrimination——including the type that occurred here——Smith requires its employees to provide applications to all persons who seek to apply for jobs. Smith maintains that it considered alternative methods to avoid discrimination in hiring, but decided to adhere to this policy. According to Smith, no discrimination complaints have been made against it since at least 1997; Smith promptly investigated Moncada's allegations and responded to her charge of

---

1991)). The standard set out in *James* was first announced in *EEOC v. Rogers Brothers, Inc.*, 470 F.2d 965, 966-67 (5th Cir. 1972) (per curiam). The *Meyer* standard was first adopted in the Fifth Circuit in *Meyer* in 1981 (although *Meyer* cites a 1972 Ninth Circuit case). The court must therefore follow the first panel opinion and apply the *James* standard, as it did in *Fenyves & Nerenberg*.

discrimination; and Smith offered to assist Moncada in her job search after Ray refused to give her an application. Smith also argues that there is no evidence that it is likely to discriminate in the future or that its policy is ineffective in avoiding discrimination in hiring.

EEOC maintains that there is a real danger of future discrimination because Smith's policy of giving an application to each applicant (1) is not a well-considered plan intended to eliminate discrimination in hiring, (2) is not adequate for a company with 650 employees, (3) was not published in Smith's equal employment opportunity policy, (4) was not placed in brochures or on posters where applicants could see it, and (5) was not a part of employee training. EEOC contends that Smith should have a well-stated policy against discrimination that includes a viable complaint procedure, and that Smith's managers should receive training in the proper way to interview and hire persons with disabilities.

Although this case involves only one discriminatory act against one potential employee by one manager, Smith has failed to establish by clear and convincing evidence that there is no reasonable probability that it will violate the ADA in the future. For example, Smith's plan only requires that every person be given a job application; it does not instruct employees on how to avoid discriminating in interviewing or hiring employees. The court will

therefore grant the following injunctive relief by amended judgment.[7] It will enjoin Smith from discriminating against any employee who is disabled, regarded as disabled, or who has a record of a disability; it will direct that Smith provide all current employees a copy of the "NOTICE TO EMPLOYEES" attached as document 92-1 to EEOC's proposed injunction form, and post copies of the notice in conspicuous places in each of the offices that Smith operates; it will order that Smith provide one hour of training to all managers, branch managers, and account managers concerning hearing impairments and hiring persons under the ADA, including, specifically, hiring, employing, and placing persons with hearing impairments under the ADA; and it will order that Smith notify EEOC of all instances in which an employee makes a complaint of disability discrimination.

IV

A

The court next addresses EEOC's request for prejudgment interest. In the judgment, the court awarded EEOC prejudgment interest from September 3, 2008 through September 22, 2010 at the highest rate permitted by law. EEOC moves for prejudgment interest from June 29, 2006 (the date that Moncada was denied employment) through September 22, 2010 at the rate of 3.25% (the prime rate

---

[7]This assumes that EEOC accepts the remittitur discussed *infra* at § VI(C)(4).

specified by the Internal Revenue Service), compounded annually.

"[T]here is a strong presumption in favor of awarding pre-judgment interest." *United States v. Ocean Bulk Ships, Inc.*, 248 F.3d 331, 344 (5th Cir. 2001). "[A] prevailing plaintiff's request for an equitable award of prejudgment interest should be granted 'in all but exceptional circumstances.'" *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, 2007 WL 4245493, at *1 (N.D. Tex. Nov. 30, 2007) (Boyle, J.) (quoting *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1057 (5th Cir. 1996)).

EEOC requests prejudgment interest from June 29, 2006 (the date that Moncada was denied employment) through the date of judgment, September 22, 2010. Smith argues that because the jury only awarded back pay for one year, awarding interest on back pay through the date of judgment would place EEOC in a better position than had the discrimination not occurred.

"District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action." *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002); *see also Wright v. Blythe-Nelson*, 2004 WL 1923871, at *11 (N.D. Tex. Aug. 26, 2004) (Fitzwater, J.). The court therefore awards prejudgment interest from June 29, 2006 through the date of judgment, September 22, 2010.

EEOC also maintains that the appropriate prejudgment interest

rate is 3.25%, the federal prime rate. Smith does not contest this rate or suggest an alternative. "Setting the rate of interest on a judgment is within the broad discretion of the district court." *Miles-Hickman v. David Powers Homes, Inc.*, 2009 WL 1797872, at *1 (S.D. Tex. June 24, 2009) (citing *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 630 (5th Cir. 1992)). "Under Title VII, prejudgment interest can be calculated at the federal rate of interest." *Wright*, 2004 WL 1923871, at *12 (citing *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000) (per curiam)). The court therefore awards EEOC prejudgment interest at the rate of 3.25%.

Finally, EEOC asserts that interest should be compounded annually. Smith argues that simple interest would make Moncada whole. The court should award compounded interest in a federal discrimination case. *See* 28 U.S.C. § 1961(b); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993); *see also, e.g., Nero v. Indus. Molding Corp.*, 167 F.3d 921, 925 n.2 (5th Cir. 1999) (awarding compounded interest calculated from date of termination in FMLA case).

The court therefore awards EEOC prejudgment interest at the rate of 3.25%, compounded annually, from June 29, 2006 through September 22, 2010, on the back pay awarded in the court's judgment.

V

The court now turns to Smith's renewed motion for judgment as a matter of law.

A

Smith moved for judgment as a matter of law under Rule 50(a) three times during trial——when EEOC rested its case, when Smith rested its case, and at the close of evidence——and it renewed its motion under Rule 50(b) after the court accepted the jury verdict. The court denied each of these motions, and Smith now renews its motion for judgment as a matter of law with respect to its assertion that EEOC is not entitled to recover punitive damages.

B

"A motion for judgment as a matter of law 'challenges the legal sufficiency of the evidence to support the verdict.'" *Jacobs v. Tapscott*, 516 F.Supp.2d 639, 643 (N.D. Tex. 2007) (Fitzwater, J.), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008). "Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue." *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (internal quotation marks and citation omitted). The facts and inferences must point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. *Id.* The court must review all of the evidence in the record and draw all reasonable

inferences in favor of the nonmoving party. *Id.* The court cannot make credibility determinations or weigh the evidence. *Id.* In reviewing the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* This means that "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (citation omitted).

To recover compensatory damages, EEOC need only establish intentional discrimination; but, to recover punitive damages, EEOC must establish that the discrimination was undertaken with malice or reckless indifference to Moncada's federally protected rights. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999); *see also* 42 U.S.C. § 1981a(b)(1) (requiring showing that defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."). "Congress plainly sought to impose two standards of liability——one for establishing a right to compensatory damages and another, higher standard that

a plaintiff must satisfy to qualify for a punitive award."
*Kolstad*, 527 U.S. at 534. The punitive damages standard focuses on
the discriminating party's state of mind. *Id.* at 534-35. Thus "an
employer must at least discriminate in the face of a perceived risk
that its actions will violate federal law to be liable in punitive
damages." *Id.* at 536.

Punitive damages can be awarded against an employer (here,
Smith) because of the act of an employee (here, Ray) if the
employee was employed in a managerial capacity and was acting in
the scope of his employment. *See id.* at 542-43 (citing Restatement
(Second) of Torts § 909 and Restatement (Second) of Agency
§ 217(C)). But "no good definition of what constitutes a
managerial capacity has been found." *Id.* at 543 (citation and
internal quotation marks omitted). The court should look at the
type of authority that the employer has given to the employee and
the amount of discretion that the employee has in what is done and
how it is accomplished. *See id.* An employer can avoid liability
for an employee's discriminatory acts where the employer "has
undertaken such good faith efforts at Title VII compliance." *Id.*
at 544.

C

Smith argues that it is entitled to judgment as a matter of
law on EEOC's claim for punitive damages because there is legally
insufficient evidence of the following: (1) that Smith acted with

malice or reckless indifference to Moncada's right to be free from
disability discrimination; (2) that Ray was employed in a
managerial capacity; (3) that Ray was acting within the scope of
his employment; and (4) that Smith did not make good faith efforts
to prevent discrimination.

1

A post-verdict motion for judgment as a matter of law "cannot
assert a ground that was not included in the motion for judgment as
a matter of law made at the close of the evidence." *Morante v. Am.
Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998). As noted,
Smith moved for judgment as a matter of law under Rule 50(a) three
times during trial, and it renewed its motion after the court
accepted the jury verdict. In support of its motions, Smith argued
that EEOC was not entitled to an award of punitive damages on the
grounds that (1) Ray was not acting in a managerial capacity and
(2) Ray was not acting within the scope of his employment. Because
Smith did not assert in its pre-verdict motions that it did not act
with malice or reckless indifference to Moncada's right to be free
from discrimination or that Ray's actions were contrary to Smith's
good faith efforts to prevent discrimination, these grounds cannot
be asserted in support of Smith's post-verdict motion for judgment
as a matter of law. The court will therefore address only the
grounds that Smith actually asserted in support of its pre-verdict
motions for judgment as a matter of law.

The court considers first whether there is sufficient evidence for a reasonable jury to find that Ray acted in a managerial capacity at the time he refused to give Moncada an employment application. Whether an employee serves in a managerial capacity is a fact-intensive inquiry. *See Kolstad*, 527 U.S. at 543; *Irvine v. El Paso Healthcare Sys.*, 250 F.3d 744, at *7 (5th Cir. 2001) (per curiam) (unpublished) (citation omitted). "Unfortunately, no good definition of what constitutes a managerial capacity has been found." *Kolstad*, 527 U.S. at 543 (citation and internal quotation marks omitted). "[N]on-senior management employees can serve in a managerial capacity." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 532 (6th Cir. 2005). In deciding whether an employee serves in a managerial capacity, the court should consider "the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished." *Kolstad*, 527 U.S. at 543 (citation omitted). Relevant factors include whether the employee could hire, fire, demote, promote, discipline, and supervise other employees. *See, e.g., Tisdale*, 415 F.3d at 531-32 (Title VII racial discrimination); *Griffin v. Citgo Petrol. Corp.*, 2008 WL 4642897, at *5, *9 (W.D. La. Oct. 20, 2008) (Title VII sexual harassment and hostile work environment); *Hines v. Grand Casino of La., L.L.C.*, 358 F.Supp.2d 533, 545-46 (W.D. La. 2005) (Title VII sexual

harassment).

In Smith's first motion for judgment as a matter of law, it asserted that EEOC had not presented evidence that Ray served in a managerial capacity. In response, EEOC moved to reopen the evidence on the issue whether Ray was acting in a managerial capacity, and the court allowed EEOC to reopen its case-in-chief. EEOC called Joe Roberts ("Roberts"), Smith's manager, who testified that Ray was the account manager when Moncada sought employment from Smith. Roberts also testified that account managers have the authority to make hiring decisions and are the immediate supervisors and contacts for employees working for Smith's clients.

In support of its present motion, Smith argues that because Ray did not have the authority to deny Moncada an application, he was not acting in a managerial capacity. This argument lacks force. The jury could reasonably have found that Ray had the authority to hire and supervise employees. Assuming that Ray did not have the discretion to deny a potential employee an employment application, a reasonable jury could still have found that Ray had the authority to hire employees and that he was therefore a manager.[8] The court therefore holds that the evidence was legally sufficient for a reasonable jury to find that Ray served in a

---

[8]Smith's argument that Ray lacked the discretion to deny an applicant an employment application presents a different matter and is not a ground that Smith can raise post-judgment because it did not preserve this ground.

managerial capacity.

The court turns second to Smith's assertion that there is legally insufficient evidence for a reasonable jury to find that Ray acted within the scope of his employment. Smith argues that because Ray acted in direct violation of Smith's policies and instructions regarding the application process, Ray was not acting within the scope of his employment. EEOC argues that Ray had the authority to hire employees and thus was acting within the scope of his employment when he refused to give Moncada an application.

"[A]n employee may be said to act within the scope of employment even if the employee engages in acts specifically forbidden by the employer[.]" *Kolstad*, 527 U.S. at 544 (citation and internal quotation marks omitted). The court should look to whether the act is of the kind the employee is employed to perform, whether the discrimination occurred substantially within authorized time and space limits, and whether the act was actuated, at least in part, by a desire to serve the employer. *Id.* at 543 (quoting Restatement (Second) of Agency § 228(1)) (internal quotation marks omitted). In *Medcalf v. Trustees of University of Pennsylvania*, 71 Fed. Appx. 924 (3d Cir. 2003), a university athletic director was in charge of selecting the applicants to interview for a coaching position. *Id.* at 926. An unsuccessful male applicant sued the university for reverse gender discrimination, in violation of Title

VII, and was awarded punitive damages. *Id.* at 925. Although the university had an equal opportunity employment policy that prevented the director from taking gender into account in hiring, the court held that she was acting within the scope of her employment when she refused to grant any male applicant an interview. *Id.* at 932-33; *see also Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 n.6 (5th Cir. 1999) (rejecting defendant's argument that "unlawful discrimination typically falls outside the scope of employment" in light of *Kolstad*, and holding that defendant's employee acted within the scope of employment in terminating plaintiff).

Even assuming that Ray acted in direct violation of Smith's policy, a reasonable jury could have found that he acted within the scope of his employment. The evidence demonstrates that one of Ray's job duties as account manager was to hire employees. The court therefore holds that there is legally sufficient evidence for a reasonable jury to find that Ray was acting within the scope of employment when he refused to give Moncada an application.

Smith's renewed motion for a judgment as a matter of law is denied.

The court now turns to Smith's alternative requests for remittitur or a new trial.

A

> In determining whether a new trial or remittitur is the appropriate remedy, [the Fifth Circuit] has held that when a jury verdict results from passion or prejudice, a new trial, not remittitur is the proper remedy. Damage awards which are merely excessive or so large as to appear contrary to right reason, however, are subject to remittitur, not a new trial.

*Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992) (citing *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683-84 (5th Cir. 1986)). "[A]t some point on the scale an excessive award becomes so large that it can no longer be considered merely excessive," but instead the award indicates bias, passion, prejudice, corruption, or other improper motive. *Wells*, 793 F.2d at 684.

B

The jury awarded EEOC on Moncada's behalf $14,400 in back pay, $20,000 in compensatory damages, and $150,000 in punitive damages. The court holds that the award is not so large as to be indicative of bias, passion, prejudice, or other improper motive. The court therefore considers whether the punitive damage award is excessive such that remittitur is appropriate.

The court is "circumscribed by the Seventh Amendment [and]

must not substitute [its] judgment of damages for that of the jury." *Bonura v. Sea Land Serv., Inc.*, 505 F.2d 665, 669 (5th Cir. 1974). In evaluating whether the punitive damage award is excessive and should be reduced, the court should utilize the three-factor approach in *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 595-96 (5th Cir. 1998), *vacated*, *Williams v. Wal-Mart Stores, Inc.*, 169 F.3d 215 (5th Cir. 1999), *reinstated in relevant part*, 182 F.3d 333 (5th Cir. 1999). *See Deffenbaugh-Williams*, 188 F.3d at 286; *Irvine*, 250 F.3d at *8. The factors to be considered are as follows: (1) the degree of reprehensibility of Smith's conduct; (2) whether the punitive damages bear a reasonable relationship to the compensatory damages awarded; and (3) how the punitive damage award in this case compares to awards in similar cases. *See Deffenbaugh-Williams*, 156 F.3d at 595-96.

C

1

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 575 (1996). This factor asks where the defendant's conduct fits on the scale of outrageousness. *Watson v. Johnson Mobile Homes*, 284 F.3d 568, 572 (5th Cir. 2002). The court should look to the following: (1) whether the conduct involved physical violence or only economic harm; (2) whether the conduct involved trickery or

deceit and not merely negligence; (3) whether the wrong is part of a larger pattern of misconduct or is a single, isolated malfeasance; and (4) whether the defendant took advantage of someone relatively unsophisticated. *Id.*

In *Deffenbaugh-Williams* a Caucasian plaintiff successfully sued for employment discrimination, alleging that Wal-Mart fired her because of her romantic relationship with an African-American coworker. *Deffenbaugh-Williams*, 156 F.3d at 585-86. The jury awarded her $19,000 in lost earnings and $100,000 in punitive damages. *Id.* at 586. Wal-Mart argued on appeal that the punitive damage award was excessive, and the court of appeals reduced the award to $75,000, holding that the defendant's conduct did not have a high degree of reprehensibility. *Id.* at 597-98. The conduct consisted primarily of one supervisor's comment that the plaintiff "would never move up with the company being associated with a black man." *Id.* at 590. The court found that because there was limited evidence of ill will and no physical or verbal abuse, the reprehensibility was not of a high degree. *Id.* at 597. Similarly, in *Hines* the court held that the degree of reprehensibility was not enough to support a punitive damages award of $170,000, concluding that the defendant did not "harbor[] some type of evil motive concerning plaintiff or engage[] in trickery or deceit." *Hines*, 358 F.Supp.2d at 552 (remitting punitive damages to $30,000).

All of the *Watson* factors strongly support a finding that

Smith's conduct was not of a high level of reprehensibility. EEOC complains only of one incident of discrimination by a single Smith manager (acting in direct contravention of Smith policy) against one potential job applicant. There was no physical or verbal abuse and no trickery or deceit. Rather, Ray indicated to both Moncada and her sign language interpreter that he was sorry. He explained that he was not giving Moncada an application because it would be very dangerous if she worked in a warehouse and could not communicate with other employees and her employer. Moreover, Roberts testified that Service Temps had no prior allegations of discrimination. In short, the evidence shows that Ray violated the ADA once. While he undoubtedly violated the law by denying Moncada an application based on a stereotypical misperception of the capabilities of a hearing-impaired person, the degree of reprehensibility is low.

2

The court next compares the actual damages awarded to the punitive damages awarded. The jury awarded $14,400 in back pay, $20,000 in compensatory damages, and $150,000 in punitive damages. Thus the ratio of actual damages to punitive damages is 1:4.36, or, stated differently, the punitive damages awarded are more than four times the actual damages.

"There is no particular disparity between punitive and actual damages that will automatically result in [the court's] declaring

a punitive damages award unconstitutional." *Watson*, 284 F.3d at 573. But "exemplary damages must bear a reasonable relationship to compensatory damages[.]" *Gore*, 517 U.S. at 580 (internal quotation marks and citation omitted). The Supreme Court held in *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991), that a punitive damages award of more than four times the compensatory damages "may be close to the line" of constitutional impropriety. *Haslip*, 499 U.S. at 23-24. The court holds in this case that punitive damages more than four times compensatory damages do not bear a reasonable relationship to the compensatory damages.

3

Finally, the court considers how the punitive damage award in this case compares to like cases. Smith cites several cases in which the discriminatory conduct was far more egregious, outrageous, and malicious, and the punitive damage award was similar or smaller than the one in this case.

For example, Smith cites *Rubinstein v. Administrators of Tulane Educational Fund*, 218 F.3d 392 (5th Cir. 2000), in which the court remitted a $75,000 punitive damages award to $25,000 where the compensatory damages award was $2,500. *Id.* at 408-09. The plaintiff in *Rubinstein* was subjected to anti-Semitic remarks and verbal abuse and was denied a pay raise because he filed a complaint with the EEOC. *Id.* at 396-97. The court noted that "[t]his case concerns one act of retaliation." *Id.* at 408.

In *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154 (5th Cir. 2008), eight African-American plaintiffs successfully sued their employer for racial discrimination and were each awarded $1 in compensatory damages and $125,000 in punitive damages. *Abner*, 513 F.3d at 156. The evidence showed that defendants referred to plaintiffs by racial epithets on numerous occasions, called them lazy, and displayed a large "KKK" marking and a noose made from electrical wire. *Id.* at 164-65. The court upheld the punitive damages award, finding that "there is no indication that it resulted from jury bias or insufficient evidence of malice." *Id.* at 165. The award in *Abner* is less than the punitive damage award in this case, but in this case there was no conduct even approaching the malicious and abhorrent conduct in *Abner*.

In *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294 (4th Cir. 1998), the plaintiff was demoted from his position as maintenance supervisor based on his disability. *Id.* at 306. The plaintiff had taken a lengthy medical leave to have a brain tumor removed, and upon plaintiff's return, defendant made no effort to inquire whether he could still perform the work, hired someone in his absence, and provided false reasons for his demotion. *Id.* at 298, 306. The jury awarded $182,500 in punitive damages, which the court reduced to $50,000, taking into consideration the harm that was suffered by the plaintiff and the amount sufficient to punish and deter the defendant. *Id.* at 306-07. *Cline* is fairly analogous

to the present case, although the defendant in *Cline* acted with more malice than Ray did. Ray apparently acted in the mistaken belief that he was doing so for Moncada's benefit (i.e., to avoid subjecting her to a risk of injury), even though he in fact violated the law that protects the hearing-impaired from stereotypical assumptions that can destroy their opportunity to participate and succeed in the workplace.

In *Tomao v. Abbott Laboratories, Inc.*, 2007 WL 2225905 (N.D. Ill. July 31, 2007), the court remitted a $3 million punitive damages award to $18,461.60, double the compensatory damages award. *Tomao*, 2007 WL 2225905, at *23. The plaintiff was retaliated against after she complained of disability discrimination. *Id.* The court noted that the illegal conduct was an isolated incident and that the plaintiff's strongest evidence was that she was financially vulnerable after she was fired. *Id.* at *21.

In *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F.Supp.2d 1303 (S.D. Fla. 2004), the court found that the appropriate punitive damage award was the lower of the amount of the back pay award or $50,000. *Richardson*, 334 F.Supp.2d at 1326-27. The court noted that the defendant's conduct was a single incident of unlawful termination because of a sexual harassment complaint and was not repugnant or part of a discriminatory pattern. *Id.* at 1324.

Considering these three factors together, the court holds that the punitive damages award is excessive and that a remittitur is required. The court is to determine the size of the remittitur by the "'maximum recovery rule,' which prescribes that the verdict must be reduced to the maximum amount the jury could properly have awarded." *Brunnemann*, 975 F.2d at 178 (quoting *Hansen v. Johns-Manville Prods. Corp.*, 734 F.2d 1036, 1046 (5th Cir. 1984)); *see also Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). Considering the *Watson* factors in their entirety, the court holds that the maximum amount the jury could properly have awarded is $68,800, which equals twice the total of the back pay and compensatory damages that the jury awarded.

Accordingly, the court denies Smith's motion for a new trial on the condition that EEOC accept a remittitur of $81,200 of the punitive damages award (i.e., accept $68,800 in punitive damages rather than $150,000). If EEOC accepts the remittitur, the court will enter an amended judgment in favor of EEOC for $14,400 in back pay; prejudgment interest on the back pay award at the rate of 3.25%, compounded annually, from June 29, 2006 through September 22, 2010; $20,000 in compensatory damages; $68,800 in punitive damages, post-judgment interest, and the injunctive relief specified above. EEOC shall also recover its taxable costs of court, as calculated by the clerk of court.

*       *       *

    For the reasons explained, the court denies Smith's October
20, 2010 motion to dismiss for lack of subject matter jurisdiction
and its October 20,2010 renewed motion for judgment as a matter of
law.  The court denies Smith's October 20, 2010 alternative motion
for new trial on the condition that EEOC accept a remittitur of
$81,200 of the punitive damages award (i.e., accept $68,800 in
punitive damages rather than $150,000).  The court grants EEOC's
October 7, 2010 application for entry of judgment for injunctive
relief and prejudgment interest.

    Within 21 days of the date of this memorandum opinion and
order, EEOC must file a written notice advising the court whether
it will accept the remittitur.  If it does, the court will enter an
amended judgment in accordance with today's memorandum opinion and
order.  If it does not, the court will vacate the judgment and
schedule a new trial.

    **SO ORDERED.**

    December 9, 2010.


                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE